James G. McCLOSKEY, Appellant,

v.

Dr. Harold M. BOSLOW, Director, Patuxent Institution, Appellee.

No. 9730.

United States Court of Appeals Fourth Circuit.

Argued June 1, 1965.

Decided July 29, 1965.

David H. Fishman, Baltimore, Md. (Court-assigned counsel), for appellant.

Robert F. Sweeney, Asst. Atty. Gen. of Maryland (Thomas B. Finan, Atty. Gen. of Maryland, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, J. SPENCER BELL, Circuit Judge, and HUTCHESON, District Judge.

J. SPENCER BELL, Circuit Judge.

This is an appeal from an order of the district court which denied the appellant's petition for a writ of habeas corpus without an evidentiary hearing.

On September 20, 1962, the petitioner, James G. McCloskey, was determined by a jury in the Circuit Court for Cecil County, Maryland, to be a defective delinquent.[1] From the trial court's order committing him to the Patuxent Institution, he filed a pro se application for

1. This term is defined in article 31B, § 5 of the Annotated Code of Maryland (1957).

leave to appeal with the Maryland Court of Appeals.[2]

This application was construed by the court as raising four points about the defective delinquency proceeding: (1) that his right to a speedy trial had been denied, (2) that his court-appointed counsel had been incompetent, (3) that certain testimony by Dr. Boslow, the director of Patuxent, had been improperly received in evidence, and (4) that he had been prejudiced by the presence of five or six armed guards in the courtroom. Leave to appeal was denied by a written opinion entered on January 28, 1963.[3] The court held that under the circumstances, McCloskey's trial on the issue of his defective delinquency had not been unreasonably delayed and that this proceeding, being civil in nature, did not come within the purview of the United States [4] and Maryland [5] constitutional guarantees to a speedy trial. The Court of Appeals also held that with respect to the petitioner's complaint that his counsel had incompetently represented him because he failed to ask for an examination by and a report from an independent psychiatrist as allowed by the statute,[6] they "must assume that, had he made the request to counsel or the court, it would have been granted." [7] The court further ruled that Dr. Boslow's testimony had been properly received in evidence and that McCloskey's complaint about the armed guards in the courtroom was without merit, adding, "It may have been a necessary precaution, in the light of his prior record." [8]

■■ Thereafter, McCloskey filed a petition for a writ of habeas corpus with the district court raising again virtually all the general issues decided adversely to him by the Court of Appeals but apparently stating some new subsidiary claims. In passing upon McCloskey's habeas petition, the district court ruled that the legal conclusions by Maryland's highest court were correct. It also decided that since a full and fair evidentiary hearing had been afforded the petitioner, it would accept the historical facts as found by the Court of Appeals. With this disposition of the case we are unable to agree because, as we have been advised by counsel, the Court of Appeals' decision was based upon McCloskey's pro se petition, without the benefit of a transcript of the prior proceedings. This is, of course, not to say that the Court of Appeals did not fully comply with the Maryland law. But this may not satisfy federal habeas corpus requirements. In these proceedings an independent federal court determination of nonfrivolous factual allegations charging a violation of constitutional rights is necessary, and a hearing is in order where the record before the federal court does not disclose the evidential bases of the factual determinations by the state court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Moorer v. State of South Carolina, 4 Cir., 347 F.2d 502 (decided June 23, 1965).

■ In view of our disposition of this case, we will not discuss in detail all of McCloskey's allegations; however, we think several of them merit some comment. As previously indicated, McCloskey has complained about the testimony given at the defective delinquency hearing by Dr. Boslow. He alleges that Dr. Boslow, the state's chief expert witness and the director of Patuxent, testified falsely that the defendant had "robbed a Catholic church" and was "a mad dog type killer" and that these statements

2. Such a procedure is authorized by article 31B, § 11 of the Annotated Code of Maryland (1957, 1964 Cum.Supp.), and the granting of such an appeal is discretionary.

3. McCloskey v. Director, 230 Md. 635, 187 A.2d 833, cert. denied, 374 U.S. 851, 83 S.Ct. 1917, 10 L.Ed.2d 1072 (1963).

4. U.S. Constitution, Sixth Amendment.

5. Maryland Declaration of Rights, article 21.

6. Article 31B, § 7(b), Annotated Code of Maryland (1957, 1964 Cum.Supp.).

7. 187 A.2d at 836.

8. Ibid.

should have been known to be false by the prosecuting attorney, who resided in the county where the defective delinquency proceeding took place and where the defendant had lived all his life and who was familiar with his record. Counsel for the state denies that Dr. Boslow perjured himself and calls to our attention the summary treatment which the Maryland Court of Appeals gave to similar assertions. However, that court, as best we have been able to determine, did not have a transcript before it when it wrote that Dr. Boslow's comments were not false and were intended to be factual and not inflammatory. The transcript would show precisely what Dr. Boslow said and likely would indicate that if Dr. Boslow did make the statements attributed to him by McCloskey, they were made on the basis of information about the petitioner contained in the institutional files and not from Dr. Boslow's personal knowledge. Nevertheless, an issue of fact has been raised, as have legal questions concerning the state's responsibility for the accuracy of what Dr. Boslow said. Cf. Barbee v. Warden, 331 F.2d 842, 846 (4 Cir. 1964); Clark v. Warden, 293 F.2d 479, 482 (4 Cir. 1961).

■■■ We also think that McCloskey's allegation that six armed guards were present in the courtroom during the defective delinquency proceeding and that their presence influenced the jury's verdict is a nonfrivolous charge which merits judicial inquiry. The presence of armed guards in a courtroom is generally a matter in the sound discretion of the trial court, but an abuse of this discretion "might well reach a point where the trial is a farce and a fair trial impossible." Odell v. Hudspeth, 189 F.2d 300, 302 (10 Cir.), cert. denied, 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656 (1951). Especially is this point worthy of consideration where the issue before the jury is not the commission of a specific crime but the general criminal propensities of the accused. It is true that McCloskey was a convicted felon, as the state points out,

but there was nothing before either the Court of Appeals or the district court which showed whether the trial court authorized the presence of the guards in the exercise of its discretion after the question had been called to its attention or whether this matter went unnoticed by the court.

Among the remaining issues raised by the habeas petition now before us is a claim that the report of the Patuxent psychiatrists, which by the time of the defective delinquency hearing was almost four years old, was too stale to constitute probative evidence of the petitioner's mental condition at that time. Counsel for the state makes the quite reasonable suggestion that if the report itself was not updated prior to the defective delinquency hearing, some of the Patuxent personnel were in a position to and probably did testify at the hearing that McCloskey's condition had not materially changed since the filing of the report. Without a review of the transcript, however, it is impossible to resolve this issue. The state also suggests that even if the report was not updated in any way prior to the hearing, McCloskey should not be heard to complain because the alleged staleness was due primarily to his escape from Patuxent and a prison sentence he served in a federal institution for an offense committed while he was a fugitive. In our view, however, this position punishes the defendant for his conduct at the very time the state was insisting that he was not capable of assuming full responsibility for his actions. McCloskey was entitled to a fair and full inquiry into his mental and emotional status based on complete and relevant testimony. On the present state of the record, we cannot say whether that was afforded him.

The judgment of the district court is vacated, and the case is remanded for proceedings not inconsistent with this opinion.

Vacated and remanded.