# RAYMOND A. HALL v. STATE OF MARYLAND

[No. 645, September Term, 1976.]

*Decided June 8, 1977.*

The cause was argued before MOYLAN, DAVIDSON and MASON, JJ.

*John F. Fader, II, Assigned Public Defender*, for appellant.

*Donald R. Stutman, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Donald Giblin, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

The appellant, Raymond A. Hall, was found to be a defective delinquent by a jury at a redetermination hearing in the Criminal Court of Baltimore. Appellant's application for leave to appeal was granted and his case was transferred to the regular appeal docket of this Court. The appellant's only contention is that the court below erred in requiring him to comply with the State's request for admission of facts and in permitting that admission to be entered into evidence against him.

The record discloses that the Office of the Public Defender on its own initiative and without a request or order of court, employed a psychiatrist to examine the appellant for the purpose of determining whether he was a defective delinquent. Upon examination, the psychiatrist found the appellant was a defective delinquent within the meaning of the statute, Article 31B of the Annotated Code of Maryland.

The State's Attorney's Office became aware of the psychiatrist's opinion and, pursuant to Maryland Rule 421 a,[1] served a written request upon the Public Defender's Office to admit:

1. That each of the following statements of fact are true:

A. That pursuant to a request originating from the Offices of the Public Defender, Dr. Leonard Hurtzberg, a psychiatrist, examined the Petitioner at the Patuxent Institution on or about April 20, 1976 for the purpose of evaluating whether the Petitioner meets the definition of a defective delinquent.

B. That Dr. Hurtzberg has been or will be paid a fee for performing these examinations from the funds of the Public Defender's Office.

---

1. A party to any action may at any time serve upon any other party a written request to admit (1) the genuineness of any relevant documents described in and exhibited with the request or (2) the truth of any relevant matters of fact set forth in the request. Copies of the documents shall be served with the request unless copies have already been furnished.

C. That subsequent to the April 20th examination, Dr. Hurtzberg reported to a representative of the Office of the Public Defender that, in his opinion, Petitioner fits the definition of a Defective Delinquent.

The Public Defender's response to this request was as follows:

1. The Petitioner respectfully declines to admit or deny that the statements made by Respondent are true insofar as that the Petitioner believes that the request is beyond the scope of the discovery rules as propounded in the Maryland Rules of Civil Procedure; further, that to admit or deny the statements would be in violation of the attorney — client privileges; and lastly, that such information is within the scope of the attorney's work product and as such is not discoverable.

The Court, in ordering the appellant to comply with the request for admission of facts, stated:

[W]hat you are really doing is circumventing the legislative intent as set forth in Article 31 (B), isn't that correct?

. . .

As I read the cases and as I read the law the sole purpose of having the Court even get into the picture of the psychiatrist is for the exclusive purpose of having him paid by State funds. If he is paid by State funds then he is required to file his report with the Court and render a full and complete report.

This admission was entered into evidence over the objection of the appellant.

Article 31B, § 7 (b) of the Annotated Code of Maryland, in

pertinent part, provides for an examination for possible defective delinquency by other than the Patuxent Staff:

> [W]henever a request has been made to examine any person for defective delinquency, other than a request made by such person himself or by his attorney on his behalf, and whenever the court has on its own initiative ordered examination of any person, then such person shall be entitled, *upon request,* to be examined by a practitioner of psychiatry of his own choice for the purpose of determining whether he is a defective delinquent within the terms of this article; and *the reasonable costs of such examination shall be defrayed by the State of Maryland from the appropriations to the judiciary, in such amount as may be approved by the court.* The report of examination made by such psychiatrist shall be submitted in writing addressed to the court. (Emphasis supplied).

We noted in *Lincoln v. Director,* 21 Md. App. 597, 602, n. 3 (1974):

> The psychiatrist of the criminal's own choice, furnished him as provided in Art. 31B, § 7 (b), is not in the position of a medical expert in an adversary proceeding. He is considered to be "independent", and is required to submit a written report of his examination and findings to the court for consideration by the trier of fact. "The defendant has no control over the admission of the report of this independent psychiatrist and the physician-patient relationship does not apply." *Savage v. Director,* 5 Md. App. 1, 2-3, quoting *Sas v. Maryland,* 334 F. 2d 506, 511, citing *Simmons v. Director,* 227 Md. 661. The defendant has no right under the statute to withhold the psychiatrist's report from the court or to exclude it from evidence at the hearing, even when unfavorable to him. *McCubbin v. Director,* 17 Md. App. 351, 354.

As we view it, the narrow issue in this case is whether the appellant was required to admit to the facts set forth in the request of the State. The State argues that because the psychiatrist here was paid with State funds he is in the same position as one appointed pursuant to the statute. Thus, the psychiatrist's report cannot be excluded from evidence, even though it is unfavorable to the appellant.

On the other hand, the appellant argues that the statute does not apply because the court neither furnished the psychiatrist nor paid for the examination. We agree. Nothing in the statute suggests, as urged by the State, that payment to the psychiatrist out of State funds, i.e., the Public Defender's appropriations, in and of itself, makes the statute applicable. Moreover, Article 27, § 5 (b) of the Annotated Code of Maryland clearly authorizes the Public Defender to pay fees and expenses for professional and technical services rendered to indigent persons. The payment of fees and expenses for an examination to determine whether a defendant is a defective delinquent are not excluded.

As we read the statute, before a psychiatrist "is considered to be 'independent', and is required to submit a written report of his examination and findings to the court for consideration by the trier of fact", *Lincoln v. Director, supra,* at 602 n. 3, he shall be appointed by the court at the defendant's request and the fees and expenses for the examination shall be paid by the court.[2] This is not the case

---

2. In Brown v. Director, 224 Md. 635, the lower court held, in a post conviction proceeding, that under § 7 b the person subject to defective delinquent proceedings was not entitled to have the trial court appoint a psychiatrist for him. Its view was that the court's only obligation was to order payment out of State funds of the fee of a psychiatrist of the person's own choice in an amount deemed reasonable by the court. The Court of Appeals found it unnecessary to pass upon the correctness of this construction of the statute because the issue had been waived by acquiescence and by failure to appeal.

Subsequent opinions of the Court do not expressly resolve the question. But the Court speaks in terms of the "right to independent psychiatric examination" in finding that such "right" was waived. Murray v. Director, 228 Md. 658; Harmon v. Director, 233 Md. 595; Davis v. Director, 243 Md. 734. See Sas v. Maryland, *supra,* 511 in which the United States Court of Appeals for the Fourth Circuit referred to "the psychiatrist of the criminal's own choice, which must be furnished him by the state upon

here. The appellant did not request appointment or payment of his psychiatrist by the court.

In *Kisselovich v. Director*, 31 Md. App. 293 (1976), a case relied on by the State as expanding the scope of § 7 (b), the defendant without a request or order of court, was examined by a psychiatrist, Dr. Louis E. Kopolow, who determined that he was not a defective delinquent. Subsequently, on 9 June 1975 Kisselovich requested and the court passed an order appointing Dr. Kopolow to examine him. At the defective delinquent hearing, the court ruled that Dr. Kopolow's report was inadmissible because the examination was conducted prior to the court's signing an order appointing him as an independent psychiatrist. On appeal this Court stated:

> We believe that Kisselovich was entitled to have the jury consider the report of Dr. Kopolow. It is correct that the examination was made before the order was issued authorizing it and that the report of that examination was not promptly filed in court. But, in the circumstances, we believe that the order of 9 June 1975 was sufficient authorization for the examination. *Id.* at 302.

*Kisselovich* is markedly different. There the court issued an order authorizing appointment and payment of the psychiatrist; whereas here there was no such request or authorization.

The State also contends that even assuming the "appellant's psychiatrist was 'private', that is, that he was paid by appellant, his reports would still be subject to discovery." On the contrary, the appellant contends that the reports of experts who do not testify are part of the attorney's work product and are not discoverable.

Rule 400 d of the Maryland Rules of Procedure provides:

> Subject to the provisions of sections e (Party's or

request. . . ." We think it the better practice for the hearing court to appoint the requested private psychiatrist when that psychiatrist is qualified and willing to make the examination. Lincoln v. Director, *supra*, at 603 n. 4.

Witness's Own Statement) and f (Information From Experts Who Are Expected to Testify at Trial) of this Rule, a party may not obtain discovery of documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) except upon a showing that

(i) The materials are otherwise discoverable under section c of this Rule, and

(ii) the party seeking discovery has substantial need of the materials in the preparation of his case, and.

(iii) he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

In this case the psychiatrist was not expected to testify at trial and his report was a document prepared in anticipation of litigation or for trial. Therefore, in the absence of showing the exceptional circumstances required, the report was not discoverable under Maryland Rule 400 d. The State, however, in its demand for admission of facts did not request the psychiatrist's report, i.e. "documents and tangible things", which Maryland Rule 400 d speaks to. Instead the State requested an admission that the psychiatrist had diagnosed the appellant as a defective delinquent. Although the requested admission of fact is neither a document or tangible thing, it still falls within the ambit of the attorney's work product exception.

The seminal case with respect to the attorney's work

product exception is *Hickman v. Taylor*, 329 U. S. 495 (1947). In that case plaintiffs sought by means of pretrial discovery to obtain copies of written statements and copies of memoranda of counsel regarding oral statements and other matters obtained by defense attorneys in the preparation for trial. The Court held that the requested material was exempted from discovery because it was the work product of the attorney.

In *Wagonheim v. Maryland State Board of Censors*, 255 Md. 297 (1969), the lower court refused to order the Board of Censors to disclose the names of all persons requested to view the film for the possible purpose of being used as a witness or for consultation concerning the obscene aspects of the film. In upholding the ruling of the lower court, the Court of Appeals stated the scope of discovery in civil cases did not go to that which is in essence the work product of the attorney accumulated in the preparation of the case. Since it is clear the names of the non-witness experts consulted were not "documents and tangible things", the Court of Appeals obviously was protecting from discovery the opinions and findings of these non-witness experts, which were part of the attorney's work product.

A similar question was answered recently in *Shavers, et al. v. Lutheran Hospital of Maryland, Inc.* (Sup. Ct. of Balt. City, Ross, J.), Daily Record, March 14, 1976, where the court held in a well-reasoned opinion that the report of a doctor who was not going to testify at trial was not discoverable either by interrogatory or deposition. The rationale of the court in *Shavers* is applicable here:

> Whether matter is discoverable does not depend upon the particular discovery device utilized. The scope of discovery established by Maryland Rules 400 and 406 and the decisions such as *Wagonheim v. Md. State Bd. of Censors, supra,* applies equally to all discovery devices. The several discovery devices are complementary means for obtaining that which is discoverable. When particular matter, such as attorney's work product, is not dis-

coverable, it is not discoverable by any of the discovery devices.

See also *Reynolds v. Koutzes* (Sup. Ct. of Balt. City, Niles, C. J.) Daily Record, Dec. 2, 1957 where the court said:

> An interrogatory requesting the diagnoses and prognoses of all physicians who have treated an injured party is not proper, since the interrogating party is entitled to know the diagnoses and prognoses as contained in reports only of those experts whom the adversary proposes to call as witnesses.

And *State ex rel. Britt v. Snyder* (Sup. Ct. of Balt. City, Niles, C. J.), Daily Record, Feb. 20, 1957 where the court said:

> [I]f an expert who has been consulted is not to be used in court, there is no duty on the litigant to disclose to his adversary what the opinion of that expert may be.

It follows from the views we have expressed, the court below erred in requiring the appellant to comply with the State's demand for admission of facts and entering that admission into evidence against him.

> *Judgment reversed.*
> *Case remanded for a new hearing.*
> *Costs to be paid by Mayor and City*
> *Council of Baltimore.*